In re ESTATE OF Ronald SLOMSKI a/k/a Ronald J. Slomski, Deceased, Jennifer Smith and Jacilyn Snyder

v.

The THERMOCLAD COMPANY, Rita Slomski, Ronalee Curtis and Randall Slomski

Appeal of Rita Slomski, Ronalee Curtis and Randall Slomski.

In re Estate of Ronald Slomski Deceased, Jennifer Smith and Jacilyn Snyder

v.

The Thermoclad Company, Rita Slomski, Ronalee Curtis and Randall Slomski

Appeal of Jennifer Smith and Jacilyn Snyder.

Superior Court of Pennsylvania.

Argued March 20, 2008.

Filed July 29, 2008.

Reargument Denied Sept. 19, 2008.

Andrew M. Schmidt, Erie, for Rita Slomski, Ronalee Curtis and Randall Slomski.

Paul J. Susko, Erie, for Jennifer Smith and Jacilyn Snyder.

Thomas J. Kubinski, Erie, for Slomski Estate.

BEFORE: BENDER, BOWES and TAMILIA, JJ.

OPINION PER CURIAM:

¶ 1 Rita Slomski, Ronalee Curtis and Randall Slomski appeal from the portion of the June 15, 2007, Order denying their motion for judgment on the pleadings relative to the issue of whether appellant Rita Slomski (Slomski) was vested with the authority to give unlimited gifts of bank account proceeds, life insurance proceeds, and personal property under a duly executed power of attorney (POA) granted to her by her son, Ronald Slomski the decedent (1330 WDA 2007).

¶ 2 Cross-appellants, Jennifer Smith and Jacilyn Snyder, appeal from the portion of the Order denying their counter-motion for judgment on the pleadings relative to the issue of whether Rita Slomski was vested with the authority to change the beneficiaries on the decedent's retirement plan under the terms of the POA[1] (1440 WDA 2007). On September 26, 2007, we consolidated the appeals *sua sponte*. *See generally,* Pa.R.A.P. 513, **Consolidation of Multiple Appeals.**

¶ 3 The record discloses the following. On March 24, 2000, decedent executed the POA at issue granting his mother, Slomski, the authority to exercise control over his affairs. He executed a beneficiary designation naming his wife Julia the sole beneficiary of his accumulated retirement earnings and cross-appellants, his stepdaughters, as contingent beneficiaries in equal shares, on May 4, 2005. Julia died on July 18, 2006, and cross-appellants became the primary beneficiaries of dece-

---

1. The Estate of Ronald Slomski is an appellee at 1330 WDA 2007 but did not join the cross-appeal at 1440 WDA 2007.

dent's retirement account then worth $190,000. On December 12, 2006, Slomski used the POA to change the beneficiaries on this retirement account from cross-appellants to decedent's siblings, appellants Ronalee Curtis and Randall Slomski. Sixteen days later, on December 28, 2006, decedent passed away in a Pittsburgh area Veterans' Affairs hospital. He died testate, and his stepdaughters were the beneficiaries of his estate.

¶ 4 On February 7, 2007, cross-appellants filed a petition for declaratory judgment requesting that they be declared the rightful beneficiaries of decedent's retirement account. The Estate filed its own petition for declaratory judgment on February 23, 2007, requesting, in pertinent part, that Slomski return gifts of, *inter alia*, bank account proceeds, life insurance proceeds, vehicles, and commodities, valued at approximately $115,000, to the Estate for distribution under the decedent's will.

¶ 5 On March 5, 2007, appellants filed an answer and new matter to cross-appellants' petition and 15 days later, they answered the Estate's petition. Thereafter, they filed a motion for judgment on the pleadings in the cross-appellants' action for declaratory judgment on March 23, 2007, and then filed a motion for judgment on the pleadings in the Estate's action. On May 4, 2007, the Estate filed a counter-motion for judgment on the pleadings and on May 17, 2007, cross-appellants followed suit.

¶ 6 Following oral argument on the four outstanding motions and after considering the previously submitted briefs, the trial court entered the Order subject of this appeal. In ¶ 1 of the Order the court granted appellants' motion for judgment on the pleadings, and denied cross-appellants' counter-motion, with respect to the retirement account.[2] In ¶ 2 of the June 15, 2007, Order, the court granted the Estate's May 4, 2007, counter-motion for judgment on the pleadings with respect to the gifting issue and denied appellants' motion relative thereto.[3]

■■■■ ¶ 7 Timely notices of appeal were filed, following which the trial court issued Rule 1925(b) Orders. Concise statements of matters complained of on appeal were secured and the court issued an Opinion on September 17, 2007. *See generally*, Pa. R.A.P. 1925, **Opinion in Support of Order.**

Our standard of review over an Order granting a motion for judgment on the pleadings requires us to determine whether the trial court erred as a matter of law or disregarded issues of fact which should have been submitted to the jury. Our scope of review is plenary. In applying this standard and scope, we must accept all of the non-moving party's well-pled facts as true. Conversely, we may only consider facts that would undermine the non-moving party's position when the non-moving party has admitted such facts. In conducting our inquiry, we confine ourselves to the pleadings and any properly attached documents or exhibits. We will affirm the grant of a motion for judgment on the pleadings only when a case is "free and clear from doubt such that a trial would prove fruitless."

*Wang v. Whitetail Mountain Resort,* 933 A.2d 110, 112–113 (Pa.Super.2007) (citations omitted).

¶ 8 Appellants raise the following issues for our consideration at 1330 WDA 2007.

---

**2.** Cross-appellants' petition for declaratory judgment was dismissed as moot.

**3.** The trial court dismissed the Estate's petition for declaratory judgment as moot.

A.  Whether an agent under a power of attorney may engage in banking transactions, tangible personal property transactions and gift making?

B.  Whether an agent under a power of attorney may change the beneficiary designation on a life insurance policy owned by the principal?

C.  Whether an agent under a power of attorney may change the beneficiary designations of the principal's qualified retirement plan?

D.  Did the trial court err in refusing to permit the agent from presenting testimony relative to the principal's intentions concerning gift making?

Appellants' brief at 5.[4]

¶ 9 Cross-appellants raise a single issue for our consideration at 1400 WDA 2007.

Whether an agent, acting under a power of attorney that does not contain the power to make unlimited gifts who changes the principal's retirement account beneficiary designations in order for the agent's children to take the retirement account instead of principal's stepdaughters designated in writing by him, has thereby made an unauthorized gift?

Cross-appellants' brief at 3.

¶ 10 We will begin our discussion by addressing appellants' argument A concerning Slomski's contention the POA legally empowered her to engage in banking transactions and make gifts of personalty, including insurance proceeds, from the estate. Thereafter, we will consider issues B and C and cross-appellants' sole argument, all of which address whether Slomski was authorized, in her position as agent of the decedent's POA, to make changes to the named beneficiaries of the principal's life insurance policies and qualified retirement plan. Issue D will be addressed last.

¶ 11 We first consider whether the trial court properly determined appellant Slomski did not have the authority to make unlimited gifts of approximately $52,857 in proceeds from various bank accounts and a Federal Employees Group Life Insurance policy valued at $34,217.99, approximately $22,854 worth of decedent's vehicles, and another $39,875 worth of decedent's miscellaneous personal property. *See* Record, No. 8, Estate's Petition for Declaratory Judgment, at 2–5.

¶ 12 Appellants maintain Slomski withdrew approximately $18,639.03 from various accounts and disposed of these proceeds along with another $34,217.99 in proceeds from the federal life insurance policy "at the specific request, direction and/or wishes of Decedent Ronald Slomski." *See e.g.,* Record, No. 11, Answer, at 3, ¶¶ 6(b)-(d). Appellants aver Slomski gifted decedent's vehicles based on "what she believed was the intent, instructions and/or wishes of Ronald Slomski." *Id.* at 4, ¶ 7. They further state Slomski gifted another $39,875 worth of decedent's personal property "pursuant to the wishes and/or directions of the Decedent, Ronald Slomski." *Id.* at 5, ¶ 8.

¶ 13 With respect to the bank account proceeds, appellants argue Slomski was authorized to withdraw and/or control these proceeds and distribute them as she saw fit in accordance with a provision in the POA allowing her: "To engage in banking and financial transactions." Appellants' brief at 23, *accord* Record, No. 43, Exb. A, at 8, ¶ 16n. Appellants point out that the phrase: "To engage in banking and financial transactions," is defined by statute, in part, as the authority to "make withdrawals from ... accounts ...

---

4.  The order of these issues has been altered for ease of disposition.

and [to] receive the proceeds in cash or otherwise," to: "Do all acts regarding ... accounts ... the same as the principal could do if personally present," and to: "In general, transact any business with a banking or financial institution that the principal could if present." Appellants' brief at 23, *citing* 20 Pa.C.S.A. § 5603, **Implementation of power of attorney,** (m) **Power to engage in banking and financial transactions.**

¶ 14 With respect to the gifting of the proceeds from the federal life insurance policy and the other personal property, appellants argue Slomski was authorized to gift decedent's property in accordance with a provision in the POA allowing her to "engage in tangible personal property transactions." Appellants' brief at 25, *accord* Record, No. 43, Exb. A, at 8, ¶ 16k. Appellants point out that the phrase, "to engage in tangible personal property transactions" is defined by statute, in part, as the authority to, "Buy, sell, lease, exchange, collect, possess and take title to tangible personal property," and to, "In general, exercise all powers with respect to tangible personal property that the principal could if present." Appellants' brief at 25, *citing* 20 Pa.C.S.A. § 5603, (j) **Power to engage in tangible personal property transactions.**

¶ 15 Appellants also point to a residual provision in the POA as vesting Slomski with the authority to dispose of the bank account proceeds, the federal life insurance policy proceeds, and the decedents' personal property in general and to deal with this property "as fully and effectually to all intents and purposes as [the decedent] could do in [his] own proper person." Appellants' brief at 24, 26, *accord* Record, No. 43, Trial Court Opinion, Domitrovich, J., 9/17/07, Exb. A, at 7, ¶ 14. Further, appellants maintain Slomski was author-

ized to dispose of the bank account proceeds, federal life insurance policy proceeds, and personal property in accordance with a provision in the POA allowing Slomski, "to make gifts." *Id., accord* Record, No. 43, Exb. A, at 7, ¶ 16a.

¶ 16 Appellants' attempts to characterize the various dispositions of decedent's property as anything other than gifts are unpersuasive. The point on the transactional spectrum on which we are focused is the point where Slomski disposed of the bank account proceeds, the federal life insurance policy proceeds, and the decedent's personal property—not the point when these assets were "withdrawn" or "possessed." A gift is defined as: "The voluntary transfer of property to another without compensation." **Black's Law Dictionary** 709 (8th ed. 2004).[5]

¶ 17 Inasmuch as Slomski's disposition of decedent's bank account proceeds, life insurance policy proceeds, and personal property are properly defined as "gifts," we must analyze whether Slomski was authorized by the decedent to make these dispositions pursuant to 20 Pa.C.S.A. § 5601.2, **Special rules for gifts.** To proceed as though another provision in the POA Act is controlling would be tantamount to elevating self-interested substantive characterizations of Slomski's dispositions over the form thereof; it would also, for all intents and purposes, render the particular rules for gifts provided in section 5601.2 ineffective. *See contra* 1 Pa. C.S.A. § 1921(a), **Legislative intent controls** ("Every statute shall be construed, if possible, to give effect to all its provisions."); 1 Pa.C.S.A. § 1922(2), **Presumptions in ascertaining legislative intent** (noting it must be assumed: "That the General Assembly intends the entire statute to be effective and certain."); 1 Pa.

---

**5.** The term "gift" is not defined in the Decedents, Estates, and Fiduciaries Code.

C.S.A. § 1932(b), **Statutes in Pari Materia** ("Statutes in pari materia shall be construed together, if possible, as one statute."); *see also Metcalf v. Pesock*, 885 A.2d 539, 541 (Pa.Super.2005). If an agent were permitted to avoid application of section 5601.2 by merely pointing to general residuary provisions in a POA, section 5601.2 would be ineffective in the very situations it was promulgated to address—namely, situations where an agent points to general authority in a POA to justify gifting the decedent's property. *See In re Weidner*, 595 Pa. 263, 269 n. 1, 938 A.2d 354, 361 n. 1 (2007) (Saylor, J. concurring).

¶ 18 Section 5601.2[6] provides, in pertinent part:

(a) **General rule.**—A principal may empower an agent to make a gift in a power of attorney only as provided in this section.

(b) **Limited gifts.**—A principal may authorize an agent to make a limited gift as defined under section 5603(a)(2) (relating to implementation of power of attorney) by the inclusion of:

(1) the language quoted in section 5602(a)(1) (relating to form of power of attorney); or

(2) other language showing a similar intent on the part of the principal to empower the agent to make a limited gift.

(c) **Unlimited gifts.**—A principal may authorize an agent to make any other gift only by specifically providing for and defining the agent's authority in the power of attorney.

¶ 19 The phrase, "A power to make limited gifts" is defined, in pertinent part, in section 5603(a), **Power to make limited gifts,** as the power of an agent to make gifts to "the principal's spouse, issue and a spouse of the principal's issue (including the agent if a member of any such class)" in an amount that does not exceed the $10,000 gift exclusion as adjusted for cost-of-living provided in 26 U.S.C. § 2503, **Taxable gifts,** (b) **Exclusions from gifts,** (1) **In general.** A limited gift in excess of $10,000 may also be made to a member of the permissible class of donees of tuition payments and medical expense payments when these payments qualify as "qualified transfers" pursuant to Internal Revenue Code section 2503(e), **Exclusion for certain transfers for educational expenses or medical expenses.** 20 Pa.C.S.A. § 5603(a)(2)(iv). The phrase, "A power to make unlimited gifts" is not defined in the Decedents, Estates, and Fiduciaries Code.

■ ¶ 20 Appellants contend the phrase, "to make gifts" vested Slomski with the authority to make unlimited gifts of the decedent's property pursuant to 20 Pa. C.S.A. § 5603(a), *supra.* The specific question we must answer, therefore, is whether the phrase, "to make gifts," is sufficient to satisfy the requirement in section 5601.2(c), **Unlimited gifts,** that the power to give unlimited gifts be specifically provided for and defined in a POA.

¶ 21 As set forth above, the phrase "limited gifts" encompasses gifts to "the principal's spouse, issue and a spouse of the principal's issue (including the agent if a member of any such class)" in an amount that does not exceed $10,000 or, alternatively, gifts to this permissible class of donees which are defined as "qualified transfers" under section 2503(e) of the In-

---

**6.** The General Assembly added 20 Pa.C.S.A. § 5601.2, **Special rules for gifts,** in 1999. In doing so, it was specifically provided that powers of attorney executed on or after the effective date of section 5601.2 would be subject thereto. 1999 Pa. Laws 39. The effective date of section 5601.2 was December 11, 1999. *See id.* Decedent executed the POA at issue on March 24, 2000; consequently, the POA is subject to section 5601.2.

ternal Revenue Service Code. 20 Pa. C.S.A. § 5603(a). The term "unlimited gift" must, by negative inference, refer to gifts which do not fit within the class of limited gifts. *See generally,* 1 Pa.C.S.A. §§ 1921(a), 1922(2), 1932(b) *supra.*

¶ 22 Gifts which can be defined as "unlimited" include gifts to anyone aside from a spouse, issue, or spouse of a principal's issue in excess of $10,000. The only way a principal can grant an agent the authority to make limited gifts is by using the phrase, to "make limited gifts," or other similar language. 20 Pa.C.S.A. § 5601.2(b),(1)(2), **Limited gifts.** Given the relative definitions of the phrases "limited gifts" and "unlimited gifts," it is apparent the greatest risk to a principal's well-being in the POA gifting context derives from an agent's authority to give unlimited gifts. Such gifts are, by definition, given to those outside the nuclear family and may be of higher value than limited gifts. As such, it would be illogical to conclude the phrase, "to make gifts," is sufficient to satisfy the specific and definitive requirements of 20 Pa.C.S.A. § 5601.2(c) when this same phrase is insufficient to vest an agent with the authority to give "limited gifts." *See contra* 1 Pa. C.S.A. § 1922(1) (noting it must be presumed: "That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). Moreover, such an assumption would violate the "fundamental principle that powers of attorney are to be strictly construed." *In re Estate of Cambest,* 756 A.2d 45, 52 (Pa.Super.2000) (citation omitted). If the phrase, "to make gifts," is insufficient to vest an agent with the authority to make limited gifts, it is clearly insufficient to vest an agent with the broader authority to make unlimited gifts. *See id.*

¶ 23 The history leading to the promulgation of section 5601.2 supports our con-

clusion. In 1992, our Supreme Court held a principal need not "explicitly identify [a] power using specific language" to vest an agent with the authority to carry out the various acts enumerated in section 5603, *supra. In re Estate of Reifsneider,* 531 Pa. 19, 24–25, 27–30, 610 A.2d 958, 961, 963–964 (1992) *abrogated as stated in Weidner, supra.* When our General Assembly promulgated section 5601.2 in October 1999, it did so with the express intent to "overrule *Estate of Reifsneider* ... to the extent *Reifsneider* would permit an agent to make a gift under a power of attorney which does not specifically provide for that power." 20 Pa.C.S.A. § 5601.2, Comment—1999. The Comment further provides: "The principal may no longer authorize the agent to make an unlimited gift by incorporation by reference." *Id.* Directly after setting forth this statement, the comment cites to the repeal of former section 5602(a)(1)(i) which permitted a principal to vest an agent with the authority to make unlimited gifts by using the phrase, to "make a gift," the phrase at issue here.

¶ 24 Based on the foregoing, we hold the phrase, "to make a gift," is insufficient to vest an agent with the authority to make unlimited gifts under a POA. Accordingly, we affirm ¶ 2 of the June 15, 2007, Order granting the Estate's counter-motion for judgment on the pleadings and denying appellants' motion for judgment on the pleadings with respect to the gifting issue; the effect of ¶ 2 was to require appellant Rita Slomski to return the bank account proceeds, federal life insurance policy proceeds, and items of personalty gifted from the decedent's estate.

■ ¶ 25 In issues B and C appellants argue the trial court erred by finding Slomski did not have the authority to change the beneficiary designation on a life insurance policy and the decedent's

retirement plan. Appellant's brief at 13–14.

¶ 26 With regard to the Banker's Life and Casualty insurance policy with a face amount of $800, appellants argue Slomski was authorized to change the beneficiary designation from cross-appellants to appellant Ronalee Curtis in accordance with language in the POA allowing Slomski, "To engage in insurance transactions." Appellants direct this Court's attention to the statutory definition of the phrase, to "engage in insurance transactions," which includes the power to "pay premiums and collect benefits and proceeds under insurance policies" and to "exercise all power with respect to insurance that the principal could if present." Appellants' brief at 13, *citing* 20 Pa.C.S.A. § 5603(p)(1),(3), **Power to engage in insurance transactions.** The Estate argues that the changing of the beneficiary designation in and of itself constituted an "unlimited gift," not an insurance transaction, and, hence, the change was unauthorized. Estate's brief at 7.

¶ 27 With regard to decedent's retirement account, appellants contend the phrase, to "engage in retirement plan transactions," included in the POA, was sufficient to vest Slomski with authority to change the beneficiary designation. Appellants' brief at 14. Appellants argue this phrase is statutorily defined, in pertinent part, as the authority to "exercise all powers with respect to retirement plans that the principal could if present." Appellants' brief at 15, *citing* 20 Pa.C.S.A. § 5603(q), **Power to engage in retirement plan transactions.** Appellants vigorously dispute cross-appellants' characterization of the changing of the beneficiary designation as a gift. Appellants' brief at 18–20.

¶ 28 Critical to the proper resolution of this issue is an analysis of 20 Pa.C.S.A. § 5601.2. While this statute has been set forth above, relative to Slomski's authorization to make unlimited gifts, for ease in reading we have inserted it here as well.

**(a) General rule.**—A principal may empower an agent to make a gift in a power of attorney only as provided in this section.

**(b) Limited gifts.**—A principal may authorize an agent to make a limited gift as defined under section 2603(a)(2) (relating to implementation of power of attorney) by the inclusion of:

(1) the language quoted in section 5602(a)(1) (relating to form of power of attorney); or

(2) other language showing a similar intent on the part of the principal to empower the agent to make a limited gift.

**(c) Unlimited gifts.**—A principal may authorize an agent to make any other gift **only by specifically providing for and defining the agent's authority in the power of attorney.**

*Id.* (emphasis added).

¶ 29 As stated above, we found the phrase "to make a gift" was insufficient to confer an unlimited power to make gifts of personal assets to any person in the absence of any evidence that the gift is in accordance with the principal's desires. We likewise conclude the power of attorney in this matter did not authorize Slomski to change the life insurance beneficiaries and retirement plan beneficiaries.

¶ 30 It is not a question of whether cross-appellants "proved" that such a change is a gift; rather, we must decide in this declaratory judgment action whether a substitution in life insurance and retirement beneficiaries is a gift as envisioned by section 5601.2 or an "insurance transaction" and "retirement plan transaction," respectively, as envisioned by 20 Pa.C.S.A. §§ 5602 and 5603. In other words, under

the pertinent statutory language, is a change in life insurance and retirement plan beneficiaries to be analyzed as a "gift," which Slomski is not permitted to make, or is such a change a "transaction?"

¶ 31 Section 5602 states in pertinent part:

(a) **Specification of powers.**—A principal may, by inclusion of the language quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal, empower an agent to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney):

  (1) "To make limited gifts."

. . .

  (11) "To engage in tangible personal property transactions."

. . .

  (14) "To engage in banking and financial transactions."

. . .

  (17) "To engage in insurance transactions."

  (18) "To engage in retirement plan transactions."

  (19) "To handle interests in estates and trusts."

¶ 32 Section 5603 more fully delineates what types of actions the agent can make through "transactional" powers. Pertinent subsections of that section are (p) and (q):

(p) **Power to engage in insurance transactions.**—A power to "engage in insurance transactions" shall mean that the agent may:

  (1) Purchase, continue, renew, convert or terminate any type of insurance (including, but not limited to, life, accident, health, disability or liability insurance) and pay premiums and collect benefits and proceeds under insurance policies.

  (2) Exercise nonforfeiture provisions under insurance policies.

  (3) In general, exercise all powers with respect to insurance that the principal could if present; however, the agent cannot designate himself beneficiary of a life insurance policy unless the agent is the spouse, child, grandchild, parent, brother or sister of the principal.

(q) **Power to engage in retirement plan transactions.**—A power to "engage in retirement plan transactions" shall mean that the agent may contribute to, withdraw from and deposit funds in any type of retirement plan (including, but not limited to, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and retirement plan, deferred compensation plan or individual retirement account), select and change payment options for the principal, make roll-over contributions from any retirement plan to other retirement plans and, in general, exercise all powers with respect to retirement plans that the principal could if present.

¶ 33 As can be seen from the statutory provisions set forth above, the power to engage in retirement plan transactions does not specifically include the power to change beneficiaries of the retirement account. Similarly, the power to engage in insurance transactions does not specifically authorize the agent to change beneficiaries; instead, it states that the agent cannot designate himself beneficiary of a life insurance policy unless the agent enjoys a certain familial status with the principal. We therefore conclude the legislature intended that any change in life insurance and retirement plan beneficiaries be treated as a "gift" subject to section 5601.2

rather than a "transaction" under section 5603.

¶ 34 As stated above, section 5601.2 was enacted in October 1999, and its stated intent was to overrule *Reifsneider, supra,* which permitted an agent under a general power of attorney to exercise specific powers outlined in the statute even when those powers were not delineated in the document. Section 5601.2, however, was tailored to overrule *Reifsneider* only to the extent it would permit "an agent to make a gift under a power of attorney which does not specifically provide for that power." *See* 20 Pa.C.S.A. § 5601.2, Comment—1999. Thus, the purpose of the section is to ensure that if the principal desires to authorize the agent to make a gift, that authorization must be specifically stated in the power of attorney and it cannot be incorporated by reference to the general powers offered to agents in the statutory provision of section 5602. It was intended to prevent the potential for abuse of the power to make gifts by agents acting under a power of attorney.

¶ 35 Life insurance policies and retirement accounts, as in this case, are often significant assets owned by the principal. As noted, section 5603, which outlines the authority attendant to the power to engage in transactions with those assets, does **not** state that the power to change retirement or life insurance beneficiaries is a "transaction" authorized by the statute. We conclude that a change in beneficiaries of a life insurance policy and a retirement plan should be viewed as a gift subject to section 5601.2 because it alters the principal's donative intent with regard to the ultimate disposition of his asset. In fact, given the nature of life insurance and retirement plans, the designation of a beneficiary is the very manner in which one makes a gift of those assets. In light of the clear legislative intent behind section 5601.2, we find

that a change in beneficiaries under a life insurance policy and/or retirement account is not authorized under a power of attorney unless that document stipulates the specific power to make unlimited gifts. *Weidner, supra,* wherein the Court determined that a power of attorney authorized an agent to change life insurance beneficiaries even though that authority was not specifically included in the power of attorney, is inapplicable to the case before us. Unlike this matter, in *Weidner,* the POA included general language incorporating the powers enumerated in the statute applicable to powers of attorney. The *Weidner* Court noted that the October 1999 amendments, which include section 5601.2, "do not apply here, as decedent's power of attorney was executed in 1993–well before the effective date of the amendments." *Id.* at 359. The Supreme Court then relied upon its holding in *Reifsneider, supra.* As noted above, however, section 5601.2 was specifically designed to overrule *Reifsneider,* to the extent that it sanctioned unlimited gifting of assets without specific language in support of a grant of that power.

¶ 36 The power of attorney at issue herein is subject to section 5601.2. A recipient of retirement benefits or a life insurance beneficiary receives a gift of those assets because no consideration is received in return. Designation of beneficiaries is the routine manner in which these types of assets are gifted. Consequently, any change in the recipient of either life insurance proceeds or retirement benefits constitutes a redirection of a gift of those assets. If the powers outlined in section 5603 are not construed subject to section 5601.2, which is specifically tailored to govern gifts, the legislative goal of section 5601.2 will be eviscerated. In the absence of express gift-giving power consistent with the mandate of section 5601.2, we agree with the cross-appellants that Slomski lacked legal authority to change the

beneficiaries of the decedent's life insurance policies and his qualified retirement plan.

¶ 37 Accordingly, as to ¶ 1 of the June 15, 2007, Order granting the appellants' March 23, 2007, motion for judgment on the pleadings and denying cross-appellants' May 17, 2007, counter-motion for judgment on the pleadings with respect to the qualified retirement account, we reverse the trial court Order and direct that cross-appellants be reinstated as the beneficiaries of the decedent's Thermoclad retirement/pension plan. The effect of our holding with regard to Slomski's lack of authority to change named beneficiaries, also mandates that any beneficiary changes made by Slomski to any life insurance policy are void and the original beneficiaries, as named by decedent, are reinstated.

■ ¶ 38 Lastly, we must consider whether the court erred when it refused Slomski the opportunity to present testimony relative to the known or probable intent of the decedent concerning disposition of gifts. Appellants' brief at 27–28. Appellants argue that if we determine "some or all of the at issue transactions were 'gift making' and that the [POA] is technically defective in this regard, then [we] must reverse the lower court's granting of the respective motions for judgment on the pleadings and remand the matter back to the lower court to take testimony relative to the Decedent's known or probable intent." *Id.* In support of this contention, appellants cite 20 Pa.C.S.A. § 5601.2(e), **Equity,** which provides: "An agent and the donee of a gift shall be liable as equity and justice may require to the extent that, as determined by the court, a gift made by the agent is inconsistent with prudent estate planning or financial management for the principal or with the known or probable intent of the principal with respect to disposition of the estate."

¶ 39 The underlying litigation is controlled by the form of the action advanced by cross-appellants and the Estate. Neither filed a complaint seeking damages relative to the cross-appellants' loss of the retirement account or the Estate's loss of decedent's proceeds and personal property. As liability is not at issue herein, it would be inappropriate to remand for a determination of the extent of Slomski's liability and/or for the purpose of allowing Slomski to get a second bite at the apple and testify with regard to decedent's intent. We therefore affirm ¶ 3 of the June 15, 2007, Order.

### Conclusion

¶ 40 Accordingly, we REVERSE paragraph 1 of the June 15, 2007, Order granting appellants' motion for judgment on the pleadings and denying cross-appellants' counter-motion with respect to the qualified retirement account. Cross-appellants, Jennifer Smith and Jacilyn Snyder, are reinstated as the beneficiaries of the decedent's Thermoclad retirement/pension plan. By virtue of our holding, cross-appellants' petition for declaratory judgment, dismissed by the trial court as moot, is GRANTED.

¶ 41 We AFFIRM paragraph 2 of the Order granting the Estate's counter-motion for judgment on the pleadings and denying appellants' motion for judgment on the pleadings with respect to the gifting issue. By virtue of our holding, the trial court's dismissal as moot of the Estate's petition for declaratory judgment is AFFIRMED.

¶ 42 In that it acts to deny appellants' requested relief, we AFFIRM paragraph 3 of the Order dismissing as moot appellants' motion for leave of court to present testimony.

¶ 43 Order affirmed in part, reversed in part.

¶ 44 Jurisdiction relinquished.